**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Eberline Oilfield Service, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING IN PART AND DENYING** |
| | ) | **THE MOTION TO COMPEL FILED BY CHAD** |
| vs. | ) | **EBERLINE AND ALL IN ONE OIL FIELD** |
| | ) | **SERVICE, INC.** |
| Chad Eberline and All in One Oil | ) | |
| Field Service, Inc., | ) | |
| | ) | Case No. 1:18-cv-245 |
| Defendant. | ) | |

Before the Court is a Motion to Compel and for Attorney's Fees filed by Chad Eberline ("Chad") and All in One Oil Field Service, Inc. ("All in One") on August 31, 2022.  (Doc. Nos. 64, 67).  For the reasons that follow, the motion is granted in part and denied in part.

I.    **BACKGROUND**

Eberline Oilfield Service, Inc. ("EOS") is owned by Rich Eberline ("Rich") and his wife. (Doc. No. 1 at ¶ 2). EOS initiated the above-captioned action against All in One and Chad, Rich's nephew and the former manager of its operations in Killdeer, North Dakota,  on November 27, 2018.  (Id. at ¶ 3).  Chad initiated a separate action against EOS and Rich, his uncle, on June 26, 2020.  See Eberline v. Eberline, Case No. 1:20-cv-110 (D.N.D.).  The two actions have been ordered consolidated.  (Doc. No. 32).   They arise out of an alleged breach of a partnership agreement between Rich and Chad, EOS's alleged misappropriation of the alleged partnership's assets, Chad's alleged efforts to subvert EOS, and Chad's departure from EOS to All in One, a competing oil field services company that he allegedly founded while still he was still working for EOS.

EOS is asserting the following fourteen causes of action against Chad and All in One: (1) violation of the Federal Trade Secrets Act; (2) violation of Federal Civil Rico; (3) breach of

employment contract; (4) breach of North Dakota's employee duty of loyalty; (5) breach of duty of confidentiality/theft of trade secrets; (6) tortious interference with contract; (7) tortious interference with business expectancy; (8) unjust enrichment; (9) theft and conversion of EOS's property; (10) unfair competition; (11) civil conspiracy; (12) actual fraud; (13) constructive fraud; and (14) deceit.  (Doc. No. 1).   EOS claims, among other things, that Chad sabotaged EOS operations by failing to submit competitive bids on open bid projects after he and EOS were unable to reach an agreement regarding his salary and his acquisition of an ownership interest in EOS, used EOS's resources to benefit All in One, poached EOS's customers and employees for All in One, and misappropriated EOS's equipment and intellectual property for All in One's use.  (Id.).

Chad is asserting the following ten causes of action against Rich: (1) breach of contract; (2) unjust enrichment; (3) quantum meruit; (4) promissory estoppel; (5) breach of fiduciary duty; (6) conversion; (7) civil theft; (8) actual fraud; (9) constructive fraud; and (10) deceit.  See Eberline v. Eberline, Case No. 1:20-cv-110 (D.N.D.) at Doc. No. 1.   Chad claims, among other things, that he relocated to North Dakota at Rich's suggestion and informally partnered with Rich in June 2011 to start what eventually become known as EOS, but that Rich wrongfully excluded him as co-owner when incorporating EOS in September 2014, reneged on promises to "take care of him" and to provide him with his interest in EOS, misrepresented EOS's fiscal health and otherwise withheld information about EOS's finances from him, began dissipating and selling off EOS's assets in early 2018, and wrongfully appropriated his interest in EOS.  Id.

On November 3, 2020, All in One served EOS with a first set of discovery requests that consisted of 25 interrogatories and 32 requests for production.  (Doc. Nos. 66-1). On January 4, 2021, EOS served All in One with its responses.  (Doc. No. 66-2).  It objected to the majority of the interrogatories and requests for production on the grounds that they were vague and undefined,

overly broad, unduly burdensome, not reasonably calculated to lead to discoverable information, and/or sought an answer to a legal question. (Id.). It also produce documents it considered responsive to Defendants' requests. (Id.).

On February 1, 2021, Chad served EOS with Interrogatories and Requests for Production of Documents. (Doc. No. 66-3). On March 12, 2021, EOS served Chad with its responses. (Doc. No. 66-4). It objected to several of Chad's requests for production on the grounds that they too were vague and undefined, overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable information. (Doc. No. 66-4).

Taking issue with EOS's objections to their respective interrogatories and requests for production, All in One and Chad (hereafter collectively referred to as "Defendants") reached out to EOS in what they have characterized as their "good faith" letter, dated September 9, 2021. (Doc. No. 66-5). EOS responded via its own letter dated September 22, 2022, that it need not respond to the interrogatories regarding its RICO claim as they called for answers to purely legal questions and that it had produced all documents in their possession concerning Defendants' requests. (Doc. No. 66-6).

On November 17, 2021, the court convened a status conference with the parties in accordance with this district's local rules to discuss their discovery dispute. (Doc. No. 59). At the close of the status conference it authorized Defendants to file a motion to compel.

On August 31, 2022, Defendants filed a motion to compel, asserting that EOS's responses to their discovery requests remain deficient and requesting that, in addition to ordering EOS to supplement their responses and produce the documents they had requested, award them the attorney fees they incurred in connection with their motion. (Doc. Nos. 64, 67). EOS and

Defendants filed their respective response and reply on September 23 and 30, 2022.  (Doc. Nos. 72, 75). Thus, the motion has now been fully briefed and is ripe for the court's consideration.

## II.    **APPLICABLE LAW**

Rule 37 of the Federal Rules of Civil Procedure authorizes motions to compel discovery. See Fed. R. Civ. P. 37 (a)(1) ("On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery.").  Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. Pro. 26(b)(1).

"The scope of discovery under Rule 26(b) is extremely broad."  Gowan v. Mid Century Ins. Co., 309 F.R.D. 503, 508 (D.S.D. 2015) (citing 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure §§ 2007, 3637 (1970)). "The reason for the broad scope of discovery is that '[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.'" 8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507–08 (1947)).

"Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery."  Colonial Funding Network, Inc. v. Genuine Builders, Inc., 326 F.R.D. 206, 211 (2018) (citing Fed. R. Civ. P. 26(b)(1)).  After the proponent makes a threshold showing of relevance, the party opposing a motion to compel has the

burden of showing its objections are valid by providing specific explanations or factual support as

to how each discovery request is improper.  Jo Ann Howard & Assocs., P.C. v. Cassity, 303 F.R.D.

539, 542 (E.D. Mo 2014) (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992),

and St. Paul Reinsurance Co. v. Commercial Fin. Corp., 198 F.R.D. 508, 511-12 (N.D. Iowa

2000)).  "The party must demonstrate that the requested documents either do not come within the

broad scope of relevance defined pursuant to Rule 26(b)(1) or else are of such marginal relevance

that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor

of broad disclosures." Id.  (quoted case omitted).  Relevancy in this context "has been construed

broadly to encompass any matter that bears on, or that reasonably could lead to another matter that

could bear on, any issue that is or may be in the case." Jo Ann Howard & Assocs., P.C. v. Cassity,

303 F.R.D. 539, 542 (E.D. Mo. 2014) (citation and quotation omitted); Klein v. Affiliated Grp.,

Inc., No. 18-CV-949 DWF/ECW, 2019 WL 1307884, at *2 (D. Minn. Mar. 22, 2019).

## III.   DISCUSSION

### A.   Discovery Requests at Issue

Below are the interrogatories and requests for production along with EOS's responses to

them that appear to be at issue.

#### All in One's Interrogatories

**INTERROGATORY NO. 2**: Identify, as the term is defined in the
introductory portion of these interrogatories, the RICO "person" and RICO
"enterprise."

**ANSWER:** Plaintiff objects to this interrogatory as vague and undefined,
overly broad, unduly burdensome, not reasonably calculated to lead to discoverable
information, and seeks an answer to a legal question to which no response is
required.

**INTERROGATORY NO. 3:**  Please describe in detail and not in summary
fashion how the RICO "person" is distinct from the RICO "enterprise" for purposes
of subsection 1962(c) violation.

**ANSWER:**  Plaintiff objects to this interrogatory as vague and undefined, overly broad, unduly burdensome, not reasonably calculated to lead to discoverable information, and seeks an answer to a legal question to which no response is required.

**INTERROGATORY NO. 4:** For purposes of a subsection 1962(a) violation, identify, as the term is defined in the introductory portion of these interrogatories, the racketeering income and how that income was used or invested into All in One Oil Field Service.

**ANSWER:** Plaintiff objects to this interrogatory as vague and undefined, overly broad, unduly burdensome, not reasonably calculated to lead to discoverable information, and seeks an answer to a legal question to which no response is required. To the extent a response is required, Defendants have not provided information related to All in One's business activities, customers, communications, or sales which are relevant to the inquiry. Plaintiff reserves the right to supplement this answer as discovery continues and Defendant's produce information in response to Plaintiffs discovery requests.

**INTERROGATORY NO. 5:** If Eberline Oilfield Service is alleging injury as a result of the use of racketeering income being invested in All in One Oil Field Service, please describe in detail and not in summary fashion how that injury from a use or investment is distinct or separate from the predicate acts you allege.

**ANSWER:** Plaintiff objects to this interrogatory as vague and undefined, overly broad, unduly burdensome, not reasonably calculated to lead to discoverable information, and seeks an answer to a legal question to which no response is required. To the extent a response is required, Defendants have not provided information related to All in One's business activities, customers, communications, or sales which are relevant to the inquiry. Plaintiff reserves the right to supplement this answer as discovery continues and Defendant's produce information in response to Plaintiffs discovery requests.

**INTERROGATORY NO. 6:** Please describe in detail and not in summary fashion how All in One Oil Field Service received income that would not otherwise have been received as a result, and used those proceeds to acquire or operate an enterprise in or whose activities have an impact on interstate or foreign commerce.

**ANSWER:** Plaintiff objects to this interrogatory as vague and undefined, overly broad, unduly burdensome, not reasonably calculated to lead to discoverable information, and seeks an answer to a legal question to which no response is required. To the extent a response is required, Defendants have not provided information related to Defendants' business activities, customers, communications, or sales which are relevant to the inquiry.  Plaintiff reserves the right to supplement

this answer as discovery continues and Defendant's produce information in response to Plaintiffs discovery requests.

**INTERROGATORY NO. 7:** Identify, as the term is defined in the introductory portion of these interrogatories, the predicate offense(s) All in One Oil Field Service committed which would support your basis for a RICO violation.

**ANSWER:** Plaintiff objects to this interrogatory as vague and undefined, overly broad, unduly burdensome, not reasonably calculated to lead to discoverable information, and seeks an answer to a legal question to which no response is required.

**INTERROGATORY NO. 8:** Please describe in detail and not in summary fashion how the predicate offenses identified in your answer to the preceding interrogatory are related and not simply isolated events.

**ANSWER:** Plaintiff objects to this interrogatory as vague and undefined, overly broad, unduly burdensome, not reasonably calculated to lead to discoverable information, and seeks an answer to a legal question to which no response is required.

**INTERROGATORY NO. 9:** Please describe in detail and not in summary fashion how the predicate offenses identified in your Answer to Interrogatory No. 7 were committed under circumstances that suggest either a continuity of criminal activity or the threat of such continuity.

**ANSWER:** Plaintiff objects to this interrogatory as vague and undefined, overly broad, unduly burdensome, not reasonably calculated to lead to discoverable information, and seeks an answer to a legal question to which no response is required.

**INTERROGATORY NO. 10:** Please describe in detail and not in summary fashion how the predicate offenses identified in your Answer to Interrogatory No. 7 have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.

**ANSWER:** Plaintiff objects to this interrogatory as vague and undefined, overly broad, unduly burdensome, not reasonably calculated to lead to discoverable information, and seeks an answer to a legal question to which no response is required.

**INTERROGATORY NO. 11:** Please describe in detail and not in summary fashion how the predicate offenses identified in your Answer to Interrogatory No. 7 forms the requisite related pattern required for a RICO violation.

**ANSWER:** Plaintiff objects to this interrogatory as vague and undefined, overly broad, unduly burdensome, not reasonably calculated to lead to discoverable information, and seeks an answer to a legal question to which no response is required.

**INTERROGATORY NO. 12:** Please describe in detail and not in summary fashion how the corrupt or corrupted enterprise engaged in interstate or foreign commerce or engaged in activities that affected interstate or foreign commerce.

**ANSWER:** Plaintiff objects to this interrogatory as vague and undefined, overly broad, unduly burdensome, not reasonably calculated to lead to discoverable information, and seeks an answer to a legal question to which no response is required.

**INTERROGATORY NO. 13:** Please describe in detail and not in summary fashion how Eberline Oilfield Service suffered an injury to its business or property that is directly or proximately caused by the defendant's RICO violation.

**ANSWER:** Plaintiff objects to this interrogatory as vague and undefined, overly broad, unduly burdensome, not reasonably calculated to lead to discoverable information, and seeks an answer to a legal question to which no response is required.

(Doc. No. 66-2).

**All in One's Requests for Production**

**REQUEST NO. 16:** A copy of the Bylaws and/or any other document related to the management and ownership of Eberline Oilfield Service and any amendments thereto.

**RESPONSE:** Plaintiff objects to the request as overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable information. Reserving Plaintiff's objections, see attached. Plaintiff reserves the right to supplement as discovery continues.

**REQUEST NO. 18:** Copies of the minutes of all meetings of Eberline Oilfield Service.

**RESPONSE:** Plaintiff objects to the request as overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable information. Reserving Plaintiff's objections, see attached. Plaintiff reserves the right to supplement as discovery continues.

**REQUEST NO. 19:** Copies of all stock certificates issued by Eberline Oilfield Service at any time since its formation.

**RESPONSE:** Plaintiff objects to the request as overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable information. Reserving Plaintiff's objections, see attached. Plaintiff reserves the right to supplement as discovery continues.

**REQUEST NO. 20:** Copies of all documents evidencing loans from any person to Eberline Oilfield Service.

**RESPONSE:** Plaintiff objects to the request as overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable information. Reserving Plaintiff's objections, see attached. Plaintiff reserves the right to supplement as discovery continues.

**REQUEST NO. 21:** Copies of all documents evidencing loans to any person from Eberline Oilfield Service.

**RESPONSE:** Plaintiff objects to the request as overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable information. Reserving Plaintiffs objections, see attached. Plaintiff reserves the right to supplement as discovery continues.

**REQUEST NO. 22:** Copies of all documents evidencing loans from Rich Eberline or any family member, relative, or friend of Rich Eberline or any business affiliated with Rich Eberline or Eberline Oilfield Service.

**RESPONSE:** Plaintiff objects to the request as overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable information. Reserving Plaintiffs objections, see attached. Plaintiff reserves the right to supplement as discovery continues.

**REQUEST NO. 23:** Copies of all documents evidencing loans by Eberline Oilfield Service to any family member, relative, or friend of Rich Eberline or to any business affiliated with Eberline Oilfield Service.

**RESPONSE:** Plaintiff objects to the request as overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable information. Reserving Plaintiffs objections, see attached.  Plaintiff reserves the right to supplement as discovery continues.

**REQUEST NO. 24:** Copies of corporate records or ledgers evidencing the identity and address of each person or entity who has owned any interest in Eberline Oilfield Service during the past five years, the consideration paid or promised for the interest, and the date(s) on which the consideration was paid or promised.

**RESPONSE:** Plaintiff objects to the request as overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable information. Reserving Plaintiffs objections, see attached. Plaintiff reserves the right to supplement as discovery continues.

**REQUEST NO. 25:** Copies of corporate records or ledgers evidencing the payment of dividends to any stockholder since the formation of Eberline Oilfield Service, to whom the dividends were paid, the amounts paid, and the date(s) of payment.

**RESPONSE:** Plaintiff objects to the request as overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable information. Reserving Plaintiffs objections, see attached. Plaintiff reserves the right to supplement as discovery continues.

**REQUEST NO. 26:** For each bank account maintained in the name of Eberline Oilfield Service , a copy of the monthly statement for the period beginning June 1, 2011 to the present.

**RESPONSE:** Plaintiff objects to the request as overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable information. Reserving Plaintiff's objections, see attached. Plaintiff reserves the right to supplement as discovery continues.

**REQUEST NO. 27:** Copies of documents or ledgers evidencing the compensation paid to any current or former officer or director of Eberline Oilfield Service since its formation.

**RESPONSE:** Plaintiff objects to the request as overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable information. Reserving Plaintiff's objections, see attached. Plaintiff reserves the right to supplement as discovery continues.

**REQUEST NO. 28:** Copies of reports, appraisals or audits prepared by investigators or consultants for or on behalf of Eberline Oilfield Service since the date of its formation.

**RESPONSE:** Plaintiff objects to the request as overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable information. Reserving Plaintiff's objections, see attached. Plaintiff reserves the right to supplement as discovery continues.

**REQUEST NO. 29:** Copies of documents prepared to secure financing or obtain any loan or credit extended to Eberline Oilfield Service.

**RESPONSE:** Plaintiff objects to the request as overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable information. Reserving Plaintiff's objections, see attached. Plaintiff reserves the right to supplement as discovery continues.

**REQUEST NO. 30:** Copies of any invoices and/or any summary invoices related to accounts receivable, accounts collected or moneys paid to Eberline Oilfield Service from any Eberline Oilfield Service customer from January 1, 2011 to the Present.

**RESPONSE:** Plaintiff objects to the request as overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable information. Reserving Plaintiff's objections, see attached. Plaintiff reserves the right to supplement as discovery continues.

**REQUEST NO. 31:** Copies of any documents evidencing the assets and liabilities of Eberline Oilfield Service and the disposition of any assets or liabilities from January 1, 2011 through the Present.

**RESPONSE:** Plaintiff objects to the request as overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable information. Reserving Plaintiffs objections, see attached. Plaintiff reserves the right to supplement as discovery continues.

**REQUEST NO. 32:** Copies of all documents evidencing any and all income of Eberline Oilfield Service from January 1, 2011 to the present.

**RESPONSE:** Plaintiff objects to the request as overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable information. Reserving Plaintiffs objections, see attached. Plaintiff reserves the right to supplement as discovery continues.

(Doc. No. 66-2).

### Chad's Requests for Production

**REQUEST NO. 3:** Produce a copy of all insurance policies insuring Eberline Oilfield Service, Inc. and/or its agents, officers, directors, or representatives since its formation.

**RESPONSE:** Plaintiff objects to this interrogatory as vague and undefined, overly broad, unduly burdensome and not reasonably calculated to lead to discoverable information.

**REQUEST NO. 9:** Produce a copy of any contracts between Eberline Oilfield Service, Inc. and any other person that you are claiming that Chad Eberline interfered.

**RESPONSE:** Plaintiff objects to this interrogatory as vague and undefined, overly broad, unduly burdensome and not reasonably calculated to lead to discoverable information. Reserving Plaintiffs objection, see previously produced documents as well as the attached.

**REQUEST NO. 10:** Produce a copy of any documents reflecting any business expectancy between Eberline Oilfield Service, Inc. and any other person that you are claiming that Chad Eberline interfered.

**RESPONSE:** Plaintiff objects to this interrogatory as vague and undefined, overly broad, unduly burdensome and not reasonably calculated to lead to discoverable information. To the extent Plaintiff understands the request, see attached.

(Doc. No. 66-4).

**B.      Motion to Compel**

In their motion, Defendants complain generally about EOS's responses to all of their discovery requests and then fixate primarily upon the above-enumerated discovery requests.  With respect to the All in One's interrogatories, Defendants acknowledge that counsel for EOS addressed some of their inquiries regarding EOS's RICO claim when responding to their "good faith" letter.  However, they assert that counsel's responses were never formally incorporated into EOS's answers to All in One's interrogatories.  They further assert that EOS has yet to substantively answer Interrogatory Nos. 2-13 and 16-19, that these interrogatories pertain to issues of fact, that EOS's objection to these interrogatories on ground that they are legal questions is specious, and that EOS's boilerplate objections on grounds of relevance, overbreadth, and undue burden are inappropriate, and deserving of sanction.

In regard to their requests for production, Defendants first assert that EOS has yet to substantively respond to All in One's Request Nos. 16, 18-27, 29, and 30-32 and Chad's Request

Nos. 3, 9, and 10. Second, they assert that they have not received the attachments referenced by EOS in its responses to All in One's Request Nos. 16, 18, 19, 20-25 and that Plaintiff otherwise failed to produce requested 1099s, federal and state tax returns, Chad's W-2s, bank statements, payroll information for EOS's employees, invoices, and the contracts or purported contracts of EOS's with which they allegedly interfered.  Finally, they assert that EOS's boilerplate objections on grounds of relevance, overbreadth, and undue burden are invalid, inappropriate, and deserving of sanction.

In response, EOS first asserts that Defendants have not made a threshold showing of relevancy to warrant the production of, among other things, the loan documents, contracts, insurance policies, documents regarding business expectancy, corporate minutes, and loan applications that they have requested.  Second, it maintains that its insurance policies, copies of its contracts, documents regarding expectancy, corporate records, and loan applications have no bearing on Defendant's claims or defenses and are therefore irrelevant.  Third, it advises at it has produced approximately 2,800 pages of documentation responsive to Defendants' requests. In an effort to illustrate the breadth of its production, it cites tax records and financial statements it asserts are responsive to All In One Request Nos. 31 and 32, copies of financial records showing payments made by EOS made to Chad and other EOS employees, copies of work tickets and accounts receivable that it asserts are responsive to All in One Request No. 30, and copies of invoices that it asserts are responsive to All in One Request No. 31.  Fourth, it asserts that many of the financial documents requested by Defendants were in the possession of its now deceased accountant and have yet to be recovered and that it does not retain any insurance policies relevant to the claims or issues in this case.  Fifth, with respect to All in One's interrogatories regarding the RICO claim, it stands on its objection and in so doing asserts that  "whether a specific person or

party meets a legal definition outlined under federal statute is within the purview of the Court and no response is required."  (Doc. No. 72).  It further asserts that, to the extent further response to these interrogatories may be required, Defendants' failure to respond to its discovery requests has prevented it from formulating a meaningful response.

### 1.    All in One's Contention Interrogatories

The interrogatories at issue can be fairly characterized contention interrogatories; they in essence ask EOS to elaborate on the factual basis for its RICO claim and to otherwise explain how the law applies to the facts in this case.  See Zubrod v. Hoch, No. C15-2065, 2016 WL 1752770, at *6 (N.D. Iowa May 2, 2016) ("In a contention interrogatory, one party asks another party to indicate what it contends, to state all the facts on which it bases its contentions, to state all evidence on which it bases its contentions, or to explain how the law applies to the facts." (internal quotation marks omitted)); see also Helmert v. Butterball, LLC, No. 4:08CV00342 JLH, 2010 WL 4537096, at *1 (E.D. Ark. Nov. 3, 2010) (distinguishing contention interrogatories from interrogatories requesting the identification of witnesses or documents bearing upon the allegations).

"True contention interrogatories may be helpful 'in that they may narrow and define the issues for trial and enable the propounding party to determine the proof required to rebut the responding party's claim or defense.'"  Helmert, No. 4:08CV00342 JLH, 2010 WL 4537096, at *1 (quoting Moses v. Halstead, 236 F.R.D. 667, 674 (D. Kan. 2006)).  "Unfortunately, they also may be unduly burdensome, particularly when they seek 'all facts' supporting a claim or defense 'such that the answering party is required to provide a narrative account of its case.'"  Id. (quoting Moses, 236 F.R.D. at 674).

Having reviewed the interrogatories, the court is not convinced that they are unnecessarily broad and unduly burdensome given the nature of EOS's claim.  The court also finds EOS's objection to the interrogatories on the ground of relevance to be specious.

Finally, the court is not inclined to conclude at this point that Defendants' interrogatories improperly pose a question of law.  Having reviewed the interrogatories along with Defendants' "good faith" letter, it appears to the court that Defendants' inquiries relate to facts or the application of law to the facts, which is permissible under Rule 33(a)(2).  See Fed. R. Civ. P. 33(a)(2)  ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact….").  EOS chose to play the RICO card.  Defendants' efforts to now flesh out the basis for EOS's claim should come as no surprise.  With that being said, the court appreciates Defendants' interrogatories may be difficult for EOS to fully answer at this point as discovery is still ongoing.

Due to the nature of contention interrogatories, some courts have taken the position that they need not be answered until discovery is completed or nearing completion.  Id. (citing Vishay Dale Elecs., Inc. v. Cyntec Co., No. 8:07CV191, 2008 WL 4868772, at *5 (D. Neb. Nov. 6, 2008) (denying the motion to compel answers to contention interrogatories until the end of discovery); Lucero v. Valdez, 240 F.R.D. 591, 594 (D.N.M. 2007) ("[T]here is considerable support for deferring answers to contention interrogatories until after a substantial amount of discovery has been completed."); In re Convergent Techs. Sec. Litig., 108 F.R.D. 328, 348 (N.D. Cal. 1985) (denying motion to compel and ordering plaintiffs to answer contention interrogatories 60 days after completion of defendants' document production).

This court is inclined to take a similar tack and will not require Defendants to immediately respond to the interrogatories.  In so doing it notes that delay of answers to the contention

interrogatories until the completion or near completion of discovery is contemplated by Rule 33(a). See Fed. R. Civ. P. 33(a)(2) ("[T]he court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time."). It further notes that discovery is ongoing and that EOS, by its account, is waiting on Defendants' production of requested documents. Accordingly, it shall deny Defendants' motion as it pertains to EOS's responses to their interrogatories without prejudice. However, in so doing, it does not excuse Defendants of their obligation to supplement their responses. It shall now move on to address Defendants' request for production of documents.

### 2. All in One's Production Requests

#### a. Request Nos. 16, 18, 19, 24, and 25

Request Nos. 16, 18, 19, 24, and 25 pertain to documentation regarding the formation, ownership, and management structure of EOS. The court finds that Defendants, in their "good faith" letter, have made a threshold showing that this documentation may have some bearing on the parties' pending claims. EOS's objections to these requests on the grounds of overbreadth and undue burden are presently unsupported. See Wagner v. Dryvit Sys., Inc., 208 F.R.D. 606, 610 (D. Neb. 2001) ("[A]n objection that discovery is overly broad and unduly burdensome must be supported by affidavits or offering evidence revealing the nature of the burden and why the discovery is objectionable."); see also Cold Spring Granite Co. v. Matthews Int'l Corp., No. CV 10-4272 (JRT/LIB), 2012 WL 13026738, at *12 (D. Minn. Aug. 20, 2012) (describing these objections as "boilerplate"). In any event, the court is unconvinced that Defendants' requests are overly broad or the production of the requested documents will be unduly burdensome. Any concerns that EOS may have regarding the sensitivity of this information can be addressed in a protective order.

Its objections aside, EOS indicated in its response to these requests that it was producing responsive documents insofar as it directed Defendants to "see attached." Based on the parties' respective submissions, there appears to be some question as to what EOS actually attached to its responses to these requests. For the sake of clarity, the court shall require EOS to produce within thirty days of this order copies of its bylaws, documentation that identifies everyone with an ownership interest in it in the last five years, and any documentation that sets forth its management structure, chain of command, and the responsibilities of those in the chain of command. If EOS has produced these documents, then its work with respect to Request Nos. 16, 18, 19, 24, and 25 is done. If no documents responsive to Defendants' requests exist, then EOS should amend its responses to reflect this.

### b.      Request Nos. 20, 21, 23, 26, 29, 30, 31, and 32

Request Nos. 20, 21, and 23 pertain to loans made by any persons to EOS and to loans made by EOS to any persons. Request Nos. 26 and 29-32 pertain to EOS's financing, assets and income; they request the production of: monthly bank statements, copies of ledgers evincing payment to its officers since its formation; copies of documents prepared to secure financing or obtain any loan or financing; copies of invoices related to accounts receivable, accounts collected, or monies paid to EOS by its customers since January 1, 2011; and documents evincing any and all of EOS's income since January 1, 2011.

EOS has apparently produced some but not all of the requested documents. Defendants maintain the requested documents that will shed light on EOS's capitalization and by extension its operation and the contributions Chad allegedly made to EOS in exchange for an ownership stake and are therefore relevant. At this point, the court is not prepared to conclude that EOS's bank statements, loans, loan applications, and documents regarding its capitalization have no bearing

on the claims and will therefore require the requested documents dating back to June 2011 (the approximately date on which Chad alleges he and Rich agreed to partner) be produced within thirty days of this order.  All in One and Chad should keep in mind that their records regarding their finances and All in One's capitalization may also have some bearing on the parties' claims and should therefore be prepared to reciprocate without objection should EOS make similar requests of them.

In regards to tax documents, namely, 1099s, W-2s, federal income tax returns, state income tax returns, All in One's thirty-two requests for production do not explicitly mention them let alone call for their production. Defendants are presumably operating under the belief that these documents are encompassed in Request No. 32—the request that EOS produce all documents evincing any and all of its income since January 1, 2011.

"While tax returns 'do not enjoy an absolute privilege from discovery,' there is a 'public policy against unnecessary disclosure." Curtis Markson, et al. v. CRST Int'l, Inc., et al. Additional Party Names: CRST Expedited, Inc., No. EDCV171261SBSPX, 2021 WL 4027541, at *3 (C.D. Cal. Apr. 14, 2021) (quoting Premium Serv. Corp. v. Sperry & Hutchinson Co., 511 F.2d 225, 229 (9th Cir. 1975)." Buchl v. Gascoyne Materials Handling & Recycling, LLC, No. 1:17-CV-048, 2019 WL 2603081, at *6 (D.N.D. June 25, 2019) (discussing the split in authority regarding the standard applied in determining the discoverability of tax returns).

Most district courts in the Eighth Circuit have adopted the two-prong test in an effort to balance the liberal scope of discovery and the policy favoring the confidentiality of tax returns. Buchl, No. 1:17-CV-048, 2019 WL 2603081, at *6 (citing Catipovic v. Turley, No. C11–3074, 2013 WL 1718061 at *5 (N.D. Iowa Apr. 19, 2013)).   Under this test, the court must find that: (1) the tax returns are relevant; and (2) there is a compelling need for the returns because the

information in them is not obtainable from another source.  Id.  The party seeking production has

the burden of showing relevancy.  Id.  Upon such a showing, the burden shifts to the party opposing

production to show that other sources exist from which the information is readily obtainable.  Id.

Here, the tax returns from the year in which EOS was apparently formed to the year in

which it was apparently incorporated may contain relevant information regarding how the

relationship among the parties was treated or not treated.  It is not clear at this point that the

information these documents contain are discoverable from another source.  Consequently, the

court shall require the production of the requested tax returns for these years but on an "attorneys

eyes only" basis.

### c.      Request No. 22

Request No. 22 pertain to loans made by Rich, Rich's family members, Rich's friends, or

any businesses affiliated with Rich or EOS.  EOS and Rich have responded they produced at least

some documents in response to this request.

The court is not inclined at this point to require EOS or Rich to provide anything more than

what they have produced to date in response to this request.  This request as presently framed is

overbroad, unduly burdensome on its face, and otherwise inappropriate to the extent it seeks

production from nonparties.

### d.      Request No. 28

Request No. 28 pertains to reports, appraisals, and audits prepared by investigators or

consultants on behalf of EOS since its formation.  Although it asserted a number of objections,

EOS apparently produced some documents as it directed Defendants to "see attached."  It also

reserved the right to supplement its response as discovery continued.  Having reviewed the parties'

respective submissions, the court cannot conclude that EOS's response to this request is deficient.

In reaching this conclusion, the court notes that Defendants motion is devoid of any explicit discussion regarding EOS's response to this request, which arguably suggests that EOS's response to this request sufficed or was not otherwise of any particular concern in the whole scheme of things.

### 3.   Chad's Request for Production

Chad's has requested production of insurance policies insuring EOS and its agents, officers, directors, or representatives since its formation,  EOS's contracts with customers it alleges Defendants interfered with, and documents reflecting EOS's business expectancy.

If EOS has insurance polices that provide coverage for the matters presently in dispute, it shall produce them within 30 days.  Obviously, it will have nothing to produce if it has no such coverage.

Regarding the requested contracts and documents regarding business expectancy, it appears from the parties' submissions that EOS has produced all of the responsive documents. Defendants have otherwise indicated they have turned over everything in their possession.  The court takes them at their word.

### IV.   <u>CONCLUSION</u>

Defendants' Motion to Compel (Doc. No. 64) is **GRANTED IN PART AND DENIED IN PART**.   Unless otherwise agreed to by the parties in writing, the parties shall fully comply with the court's rulings as set forth above within 30 days. Any documents or other information that the court has stated may be designated "attorney eyes only" may only be viewed by the attorneys for the party to whom the documents are produced or that party's experts and, in all other respects, shall be treated as confidential.  The parties are free, however, to agree to some other treatment of the "attorney eyes only" documents and information, all or in part, provided it is done

in writing. The court declines to award Defendants' costs and expenses associated with its motion.

Defendants' request for attorney fees (Doc. No. 67) is therefore **DENIED**.

> **IT IS SO ORDERED.**

Dated this 11th day of January, 2023.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court
